**NORTH CAROLINA NATIONAL BANK,**
Appellant,

v.

**LUMBERMENS MUTUAL CASUALTY
COMPANY, Appellee.**

No. 9425.

United States Court of Appeals
Fourth Circuit.

Argued June 23, 1964.

Decided July 23, 1964.

W. H. McElwee, North Wilkesboro, N. C., (Richard A. Vestal and McElwee & Hall, North Wilkesboro, N. C., on brief), for appellant.

W. F. Maready, Winston-Salem, N. C., (Ralph M. Stockton, Jr., and Hudson, Ferrell, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and MICHIE, District Judge.

PER CURIAM.

In this action the North Carolina National Bank, at North Wilkesboro, sought to recover upon a bankers' blanket indemnity bond issued by the Lumbermens Mutual Casualty Company. Directing a verdict for the defendant at the conclusion of all of the evidence, the Court held that the loss sustained by the Bank was not within the bond's coverage. With this we agree.

The bond safeguarded the Bank against harm from deprivation of its property in the use of false pretenses. Losses resulting from default in any loan and losses through forgery were specifically excluded. In addition to these two exclusionary provisions, in denying recovery the insurer also asserts that the misfortune here was not a loss of "property" within the contemplation of its obligation. The bond provision on which the plaintiff relies is the policy's covenant to pay the Bank for:

"(B) Any loss of *Property* through robbery, burglary, common-law or statutory larceny, theft, *false pretenses*, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without

negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of *Property*, while the *Property* is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in an office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation." (Accent added.)

The clause excepting the loss of a loan describes the excluded risk as:

"Any loss the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses. * * *" Section 1(d).

The instant damage arose in this manner. An arrangement was made by the Bank with a customer to advance upon sales invoices, with annexed freight receipts showing the customer's shipments to its vendees, approximately 75% of the face of each invoice, provided there was also attached to it the customer's 30-day note payable to the Bank for the amount of the advance. These papers had to be accompanied, too, by a document purporting to sell and assign the invoice to the Bank. On collection of the invoice by the customer, the consignee's check would be applied first to the 30-day note, including interest, and the balance put to the account of the customer at the Bank.

The plan worked well for several years until the customer delivered to the Bank false and counterfeit invoices. These represented, as genuine shipments, consignments that had not in truth been made. Included were freight receipts on which the name of the carrier had been forged.

As the District Court held, contrary to the insistence of the Bank, we think each of the transactions was in law a loan. True, the Bank filed notices of the assignment of the invoices as the General Statutes of North Carolina, §§ 44–77 et seq., require in order to protect an assignee of an account receivable. But this was not sufficient to convert the transfer into a sale and purchase. While the document employed to pass the invoice to the Bank speaks of a sale, in actuality and in law it was obviously nothing more than a pledge of the invoice as security for the note evidencing a loan. Therefore, we need not consider whether the instant loss was the result of forgery or whether it encompassed "property" under the policy usage and definition.

With no factual conflict, the District Court was altogether right in declaring the loss conclusively excluded from the indemnification of the bond and the defendant Lumbermens Mutual Casualty Company entitled to a verdict.

Affirmed.